2 Douglas,
2d 141
67 210
67 212

BRADFORD CAMPBELL, ADMINISTRATOR OF WILLIAM A. CLARK, APPELLANT.

In this state, a widow is entitled to dower in *wild lands.*

Notice to the administrator, of proceedings in the probate court, (under R. S. 1838, ch. 2, p. 262,) for assignment of the widow's dower, is not necessary.

APPEAL from the Probate Court of Livingston county. William A. Clark died intestate, leaving a widow, Jacintha, and heirs, and also property both real and personal. Bradford Campbell was duly appointed administrator of

the estate, and had partially administered upon it, when, July 30, 1844, the widow petitioned the probate court, (under R. S. 1838, ch. 2, p. 262,) to appoint commissioners to set off her dower in all the real estate of which her husband died seized,—her right to dower not being disputed by the heirs, &c.   The court thereupon appointed three commissioners for that purpose, who, after having duly qualified, proceeded to set off to the widow, by metes and bounds, dower in all the real estate of the deceased, including a large quantity of *wild and uncultivated lands.* The report of the commissioners having been duly made and filed, the probate court, on the 15th day of August, 1844, ordered and decreed that the real estate therein described, be set off to the said widow, Jacintha, as her dower, &c.   Campbell, the administrator, *who had not been notified of these proceedings,* thereupon appealed from this decree of the probate court, for reasons which sufficiently appear in the opinion of the court delivered by

RANSOM, C. J.   1. The first objection urged against the decree of the court of probate is, that by it dower is assigned in wild and uncultivated lands of the deceased. Whether dower should be allowed in wild and uncultivated lands, is a question which has been much mooted in this country, and has been differently settled in different states.

It is held in England, that a widow shall not be endowed of wild lands, because to clear them of their timber would be waste, which is a " permanent injury to the inheritance," and works a forfeiture of the dower.   But there is a widely marked distinction between the state of things in England and in this country.   In the former, it is said, " every part of every tree will bring cash," and, consequently, it is waste to fell and clear them off the land on which they are growing.   But in the latter, lands are al-

most wholly wild and uncultivated, and nearly valueless till cleared of the timber :—hence, many of the American courts have decided, that, inasmuch as the clearing of lands enhances their value, it is beneficial to the owner, and is not waste. It follows, of course, that where, by the established law, it is not waste to clear wild lands, dower shall be allowed in them.

In Pennsylvania, Virginia, Tennessee, North Carolina, and, perhaps, some other of the states, tenants in dower have been allowed to clear wild lands; and in the latter state, it has been held that a dowress may cut timber to make into staves or shingles, if that be the common and only beneficial use of the land. And if we keep in view the object of dower, viz : the support of the wife, and the maintenance and education of the children, that decision will be found perfectly consonant to reason and good sense, and to the dictates of humanity. In Massachusetts, and several other of the older states, a different doctrine prevails. The strict rules of the English law have been adopted, and it is held that there shall be no dower in wild lands, because the clearing of them would be waste, and forfeit the estate. Hilliard's Abr. 71, 171.

The absurdity of applying this rule in the existing condition of this country, will be apparent, when we consider what is the doctrine of the English law relative to waste. By the strict rules of the English common law, it would be waste not only to convert unproductive forests into fruitful fields, flowering meadows, and green pastures, but also to reconvert those fields, meadows, and pastures into forests. To turn arable, meadow, or pasture, into wood land, or to turn arable or wood land into meadow or pasture, are all of them waste, at the common law ; "for, it not only changes the course of the husbandry, but the evidence of the estate," say the English books:—reasons that could have existed only when the true principles of

agriculture were little understood, and when written conveyances and registry laws were wholly unknown.    The rotation of crops, which can only be resorted to by changing meadows and pastures into plough-land, and ploughland again into grass land, is the most valuable improvement introduced into modern agriculture, and has, doubtless, doubled the productions of the older sections of our country.

The *reasons* upon which the common law upon this subject is founded, having no existence in our state, the *law* itself should not be adopted; and this court has, on a former occasion, so held.   In the case of *Godfroy* v. *Brooks,* decided at the January term, 1841, one point presented was, whether a widow should be endowered in wild lands, and the question was determined in favor of the demandant.   " It has been the steady policy of the government," said Justice *Whipple,* who delivered the opinion of the court in that case, " to encourage the sale and cultivation of the vast body of waste land in the west, and this policy has produced results truly wonderful.   It has made Ohio, which but a few years since was a wilderness, the abode of more than a million of happy and free people. That same policy has wrought wonders in Indiana and Illinois, and in our own beautiful peninsula.   Here the hand of industry has been at work, levelling the forest and reclaiming the wilderness, and it would be difficult to convince a Michigan farmer that a tenant in dower is committing waste, or doing a permanent injury to the *inheritance,* by clearing land of its surplus timber and converting it into a beautiful farm."   On a review of this question, I am fully confirmed in the correctness of our decision of it, in the case just cited.

2. Again, it is contended, upon this appeal, that no notice was given to the administrator, or to the creditors, of the proceedings in setting out the dower.

The statute, (R. S. 1838, Pt. 2, Tit. 1, ch. 2, p. 263,) regards the assignment of dower as a matter entirely between the widow and heirs, or other tenants of the land. The third section of the chapter above cited, provides that, "when a widow is entitled to dower in lands of which her husband died seized, and her right to dower is not disputed by the heirs or devisees, or any person claiming under them or either of them, it may be assigned to her, &c. by the judge of probate, on application of the widow, or any other person interested for the lands."*

By the fifth section, "if the dower is not assigned by judge of probate, nor set out within thirty days after demand made by the heir or other tenant of the freehold, the widow may recover the same, by writ of dower, in the courts of common law."†

Section six enacts that "when a widow is entitled to dower in the lands of which her husband died seized, she may continue to occupy the same, with the children or other heirs of the deceased, or to receive one third part of the rents, issues, or profits thereof, so long as the heirs do not object thereto, without having her dower assigned;‡ and whenever the heirs or any of them, shall think proper to hold or occupy their shares, in severalty, the widow may claim her dower, and shall have the same assigned to her," &c.

Other provisions of our statutes, it is true, authorize the sale, by the administrator, of a part or all the real estate of the deceased, for the payment of debts ; but these provisions, it is believed, do not affect the widow's right of dower, until a sale for such purpose is actually made.

---

* Re-enacted substantially by R. S. 1846, ch. 66, § 8, but with the additional provision that notice of such application shall be given to such heirs, devisees, or other persons, in such manner as the judge of probate shall direct.

† Not re-enacted by R. S. 1846.

‡ Re-enacted by R. S. 1846, ch. 66, § 112; remainder of the section as quoted not re-enacted.

The heirs of a deceased insolvent, are entitled to the rents and profits of his real estate, until it is sold for the payment of his debts ; for the real estate descends by law to the heirs, and they accordingly may enter immediately, and may remain rightfully in possession, until the administrator, in behalf of the creditors, shall sell it, pursuant to license obtained for that purpose.

The Revised Statutes, 1838, p. 267, ch. 1, § 1, provide that, " When any person shall die, seized of any lands, tenements or hereditaments, or of any right thereto, or entitled to any interest therein, in fee simple, or for the life of another, not having lawfully devised the same, they shall descend, subject to his debts, in manner following,"* &c.  By section 12, of the same chapter, it is provided, that nothing therein contained shall affect the title of a widow as tenant in dower.†  The statute no where authorizes the administrator to take possession of the real estate to the exclusion of the heirs.  If there be heirs, he cannot interfere with the lands any farther than it may be necessary for the purpose of making an inventory and appraisal of the estate, real and personal; for the care and disposition of the personal property; and for the sale of the real estate, when it is found necessary for the payment of debts, &c.  We conclude, consequently, that the admeasurement and assignment of dower are proceedings which concern the widow and heirs alone.

Our statute has modified the common law, so far only, as to authorize the judge of probate of the proper county, to assign dower, if the heir or tenant in possession neglect or refuse to do so, instead of driving the widow to her writ of dower.

Our probate act is borrowed from Massachusetts ; it is also substantially like that of New York, so far as it re-

* Re-enacted R. S. 1846, ch. 67, § 1.   † Re-enacted, Id. § 12.

spects the particular question we are now considering. The statutes of both those states, like our own, do not require notice to be given to administrators, of the application to the judge of probate for the assignment of dower, or of the time of the admeasurement by the commissioners, or of the confirmation, by the probate court, of their return. And I have been unable to find any case in either of the states mentioned, in which such notice was adjudged necessary. Notice to the heirs, however, or the tenant in possession, of all the proceedings, is requisite in both.

In those states, too, the administrator is authorized to sell real estate for the payment of debts, when the personal effects are insufficient, in the same manner as in this state prior to our statute of 1843.

Suppose the heir should set out the dower to the satisfaction of the widow, as he may do, that would be good, certainly, as to all except the creditors, and equally so as to them, until it should be found necessary to sell land for the payment of their debts. The administrator, clearly, would not be entitled to notice of such proceeding : and, the assignment of dower, by the judge of probate, is substituted for setting it out by the heir, when he neglects to do it. Neither affects, in the slightest degree, the rights of creditors.

At common law, the heir can assign dower without resorting to any court; and the right is not impaired by any provisions of the statute for its admeasurement. The proceedings by petition before the courts, for the admeasurement and assignment of dower, cannot affect or prejudice the *right* to dower, or the legal or equitable *bar* to it. Those rights, if litigated, remain open for inspection in the ordinary course of justice. Lambert on Dower, p. 93.

By our statute, (R. S. 1838, pp. 311, '12, '13,) the administrator is authorized to sell a part, or the whole of the

real estate, if necessary, for the payment of debts, upon obtaining license therefor; but no such license shall be granted until fourteen days' notice of the petition, and of the time and place of hearing the same, shall have been given to all persons interested in the estate, that they may appear to show cause why license to sell, should not be granted. The notice here provided for, is for the protection of the rights of the widow and heirs;—and they may prevent the sale, by giving bonds for the payment of the debts, or showing any sufficient cause why the same should not be made. If, however, no bond be given, and no good cause be shown against a sale, the administrator shall be licensed to sell a part or the whole, &c.* Where, after dower has been assigned, there are lands of the deceased remaining sufficient to pay all the debts, creditors can be in no way affected by the assignment of dower. But, where it is found necessary to sell the whole of the real estate, and the whole is inadequate to pay all the debts, as the sale must be made subject to the widow's right of dower, the creditors are, or may be affected by the proceedings assigning dower. And it would seem that the administrator who represents the creditors, ought, in such case, to be notified of such proceedings, upon the general principle that parties to be affected by legal proceedings are entitled to notice.

But as the Revised Statutes, (of 1838,) do not abridge the rights of the widow, or change the mode of enforcing them, except to provide additional facilities therefor, by application to the probate court for the assignment of her dower; and, as they contain no provision for notice to the administrator, I incline to think that none is requisite, even under those statutes.

The probate act of 1840, however, it seems to me, puts

* See R. S. 1846, ch. 77, §§ 1, 5, 10, 12.

this question entirely at rest.    That act, after making sundry amendments to the revised statutes in relation to sales of real estate by administrators, goes on to provide, (section 13, p. 63,) that, " the executor or administrator shall, in the first place, pay out of the moneys arising from such sale, the charges and expenses thereof.    They shall next satisfy any claim of dower which the widow of the testator or intestate may have upon the land so sold, by the payment of such sum in gross, to be ordered by the judge of probate, as shall be decreed, upon the principles of law applicable to annuities, a reasonable satisfaction for such claim, if the widow shall consent to accept such sum in lieu of her dower," &c.

The next section provides, that " if, after reasonable notice for such purpose, no such consent be given, the judge of probate shall set apart *one-third part* of the purchase money, to satisfy such claim, and the executor or administrator shall invest the same in permanent securities, on annual interest, which interest shall be paid to the widow of the testator or intestate during her life."

Under this law, it was, that the rights of the demandant in this case became fixed ; and it is most obvious that, whatever proceedings may have been had, in the setting out or assigning of dower, they could in no way prejudice or affect the rights of creditors, or the administrator ; consequently, neither could insist upon notice of such proceedings.

The decree of the Probate Court must be affirmed.

*Peck* argued the cause for the appellant, and *O. Hawkins,* contra.