67 194
70 110
67 194
72 98
67 194
108 180
67 194
109 506

## EMILY L. KING v. WILLIAM MERRITT.

*Executors and administrators— Will—Authority to sell and convey real estate—Deed—Certificate of acknowledgment—Dower— Jurisdiction of probate court—Ejectment—Declaration—Statute of limitations—Deed of infant.*

1. Confirmation of an executor's sale and deed thereunder, made to carry out a contract of the deceased, will be presumed after the lapse of 40 years.

2. In case the trustees appointed in a will fail to accept or discharge the trust, it is the duty of the court to commit its execution to parties who will execute it; and this may be done by issuing letters of administration with the will annexed.

3. The Legislature authorized an executor to sell certain lands,—the act being supplemental to a similar power conferred upon him, jointly with others, by the will of the owner,—but provided that, before any title should vest under the deeds executed on such sale, the executor should have indorsed on said deeds the approval of the judge of probate of the proper county.

 *Held*, that the statute did not require such approval to appear anywhere except upon the deed; and that an indorsement of approval "of the foregoing conveyance of the execution of the last will and testament" of the deceased, in conformity to the act (citing same), must be construed as "the approval or consent to such sale," whether judicial or otherwise.

4. A will "authorized and requested" three persons therein named (without appointing them as executors) "to sell, at such times and in such manner as they shall deem expedient," all of the testator's "town or village property," and directed how the proceeds should be disposed of.

 *Held*, that the power under the will was sufficient.

5. Where a defendant in ejectment claims possession under deeds, whether valid or not, they are admissible in evidence for the purpose of showing possession under *color of title,* and the *extent* thereof.

6. An executor is authorized, under a will empowering him to make partition of any lands owned by the testator at time of his death in *common* with any other person, to make such partition with a

grantee to whom he has conveyed an *undivided* interest in certain lands, contracted by the testator in his life-time, pursuant to license from the probate court.

7. Whenever *substance* is found in a certificate of acknowledgment, obvious *clerical* errors and all *technical* omissions and defects will be disregarded, and, in order to uphold it, it will be read in connection with the instrument, and in the light of the surrounding circumstances.

So *held*, where the acknowledging officer certified that a married woman acknowledged the execution of a deed "*with* fear or compulsion from any person," it clearly appearing that the word "*with*" was intended to be "*without.*"

8. Proceedings to assign dower may be had at any time, before or during administration, or after administration is closed ; and, if the estate is solvent, no one but the heirs and widow are interested therein.

9. In ejectment for dower the description of the land in the declaration must be so certain that possession may be delivered by the sheriff without any reference to any description *dehors* the writ, and any defect of this kind cannot be cured by reference to any deeds or records. *Evans v. Evans*, 29 Penn. St. 277.

10. The probate court is not authorized to take cognizance of proceedings to set apart dower, in the absence of an application stating such facts as are jurisdictional, among which are—

*a*—The residence of the widow.

*b*—That she is a widow.

*c*—That the estate in which she asks to be endowed is that of her deceased husband, of which he died seized.

*d*—That her right to dower is not disputed by the heirs or devisees.

*e*—That she or some other person interested in the land wishes it set apart.

11. Where the claim that a widow has made application for the assignment of her dower was based upon *memoranda* found among but constituting no part of the files of the probate court,—

*Held*, that the same were inadmissible for any purpose.

12. Where the report of the commissioners appointed to assign dower recited that they met at a certain date to discharge said duty, when the widow, as also the heirs, appeared and were present, in person and by attorney, and it appeared that the heirs were all minors, and the widow was their guardian,—

*Held*, that she could not appear for them, her interests being antagonistic to theirs, nor could they appear for themselves, nor appoint an attorney to appear for them ; and, there being no *other* proof of notice, the proceedings were for that reason void.

13. Parties whose interests are prejudiced may always take advantage of want of jurisdiction in the court where the injury occurred.

14. Notice to heirs of an application for the assignment of dower is implied, in the absence of an express statutory requirement therefor.

15. Recovery of dower may be barred by the statute limiting actions of ejectment. *Proctor v. Bigelow*, 38 Mich. 282.

16 The right of dower is not an undivided third of the entirety, but one-third in *severalty* (*May v. Rumney*, 1 Mich. 1, 9; *Rayner v. Lee*, 20 Id. 384); nor is it one-third in *quantity*, but the widow is entitled to the *use* of such part as will yield one-third of the *entire income* of the *whole*.

17. Until dower is legally assigned, the person entitled to the fee may bring ejectment against one wrongfully in possession, and recover.

18. The provision of *How. Stat.* § 8706, that the rights of parties are to be determined by the law in force *when* the right of action accrued, relates, not to the subject of *disabilities*, but to the *time* when the *statute* became a law.

19. The deed of a minor, with knowledge of his rights, should be held affirmed by the grantor, unless some claim is made by him to the premises conveyed within a period of 40 years after he became of age.

Error to Calhoun. (Hooker, J.) Argued June 22, 1887. Decided October 13, 1887.

Ejectment. Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*J. L. Hawes*, for appellant.

*Myron H. Joy* (*C. I. Walker*, of counsel), for defendant.

SHERWOOD, J. This action is ejectment, brought to recover possession of an undivided interest in blocks 55 and 58 in the village of Verona, in the county of Calhoun, which includes certain mill privileges. The cause was tried in the Calhoun circuit by jury in March, 1887, and verdict and judgment were rendered for the defendant.

The declaration contains five counts, each claiming a different interest.

The claim in the first count is to an undivided half of said blocks, according to the recorded plat of said village,—

"Located on the north half of section five, in town two south, of range seven west, and of the mills, mill privileges, and water-power appurtenant thereto."

The second count claims an undivided three-quarters of the same property; the third, an undivided one-quarter; the fourth, an undivided three-eighths; and the fifth, an undivided one-eighth. In each count the fee of the parcel is claimed.

The defendant's plea is the general issue.

From the record it appears that Ezra Convis became the owner of the north-west quarter of said section 5 by entry, receiving his patent therefor, dated May 5, 1836.

Convis died in February, 1837, leaving a widow and five minor children. The widow died in 1872. The children's names were Amanda, Albert, Ezra, Emily L., and Wallace C.

Wallace died without issue, and unmarried, before this suit was commenced.

Before Ezra Convis died he sold one-eighth of his interest in the property to Sylvester Mills, and gave him a bond for the conveyance thereof. Mills assigned this bond to John Stewart.

Ezra Convis, shortly before his death, made and executed the following will, which was subsequently probated:

"I, Ezra Convis, of the county of Calhoun and State of Michigan, do make this, my last will and testament.

"I appoint John M. Barbour, of Berrien county, Isaac E. Crary, of Calhoun county, and Epaphroditus Ransom, of Kalamazoo county, and I do hereby authorize and request them, to sell, at such times and in such manner as they shall deem expedient, all my town or village property, and with the proceeds thereof to pay my debts, and the balance thereof to invest or dispose in such manner as to them shall seem best for the interests of my heirs.

"I do hereby give to my executors all necessary power for the full settlement of my estate, directing that they shall not sell my wild, or uncultivated, unimproved lands, or any part thereof, unless for the proper maintenance and education of my children, and at such times and in such quantities only as may be necessary for that purpose.

"In testimony whereof I do hereby set my hand and seal this eighteenth day of February, 1837.

"E. CONVIS. [L. S.]"

In his will he appointed Isaac E. Crary, John M. Barbour, and Epaphroditus Ransom his executors. Ransom and Barbour did not qualify, and Isaac E. Crary became sole executor of the will.

In 1839 the Legislature passed the following act (Act No. 57, Laws of 1839), authorizing Crary to sell or make partition of the lands belonging to Ezra Convis:

"An act authorizing Isaac E. Crary, executor of the last will and testament of Ezra Convis, to sell certain lands.

"SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Michigan.* That it shall be lawful for Isaac E. Crary, executor of the last will and testament of Ezra Convis, late of the county of Calhoun, in said State, deceased, and he is hereby authorized and empowered, to have partition of any lands which said deceased owned and held in said State at the time of his death in common with any other person or persons, and to sell all or any part of the same at public or private sale, on credit or otherwise, under the restrictions contained in the will of said Convis, and on such partition or sale to make, sign, and execute in due form of law the necessary deeds and conveyances to the other owners of said lands to vest in them the fee simple of such lands as may be divided to them in partition, and also to vest in the purchaser of said lands the fee simple of the same: *Provided, however*, that before any title shall pass by virtue of such deed it shall be the duty of said executor to have indorsed on said deed or deeds the approval or consent to such sale or partition by the judge of probate of the county or counties within which the premises so sold or partitioned may lie.

"SEC. 2. This act shall take effect to be in force from and after the day of its passage.

"Approved April 15, 1839."

In 1842 Lydia Convis, the mother, was appointed by the judge of probate guardian of the minor children.

In the month of December, 1842, the probate court issued a warrant to commissioners to set off the dower of the widow in the real estate of Ezra Convis, deceased.   The commissioners made their report in January, 1843, which was approved by the probate judge in April following; and among the lands set apart for her was an undivided one-third of blocks 55 and 58, together with one-third part of all the rents, issues, income, and profits of the saw-mill, grist or flouring mills, and water privileges thereon.

Amanda Convis was the eldest of the minor children, and on the twenty-seventh day of April, 1841, she was married to John Van Arman, then being, according to her marriage certificate, but 18 years of age.

The claim of the plaintiff is based upon the following grounds:

"1. Her *own* right, as one of the heirs of Ezra Convis, which would be one-fourth of the property of the estate that belonged to her father, after the death of her youngest brother.

"2. Mrs. Van Arman's interest that she inherited of the same property, and which has been conveyed to plaintiff.

"3. Albert's proportion of the same property, which had been transferred to Mrs. Van Arman, and from Mrs. Van Arman to the plaintiff."

Her claim in fact is to three-fourths of so much of the property as belonged to the estate of Ezra Convis.   To establish these, counsel for the plaintiff first introduced in evidence the patent issued to Ezra Convis, it being admitted that it covered the premises in question.   Counsel for plaintiff next offered evidence of the marriage of Amanda, and the exclusive possession of the property in suit by the defendant at the time this action was brought.   The plaintiff, after offering testimony tending to prove the signature of Albert Convis to a quitclaim deed dated September 19, 1881, con-

veying the said north-west quarter of said section 5 to Amanda Van Arman, offered the same in evidence. Plaintiff also offered a quitclaim deed from Amanda Van Arman to the plaintiff of all her interest in the estate of Ezra Convis, late of Calhoun county, deceased. The plaintiff here rested her case.

Defendant's counsel then offered in evidence the will, heretofore referred to, of Ezra Convis, deceased, from the records of the probate office, and an order of the probate court appointing Isaac E. Crary sole executor of said will.

The defendant then offered the following testimony for the purpose of showing that Isaac E. Crary, as executor, under Act No. 88, Laws of 1840, § 4, conveyed one-eighth of the property in question to John Stewart:

1. The petition of Sylvester Mills and John Stewart to the probate court for that purpose, and, in connection therewith, and referred to therein, the bond of Convis to Mills, and also the assignment of the same from Mills to Stewart.

2. The statutory notice required by the act to be given by the judge of probate.

3. The license to Crary, as executor, to sell, under date of December 24, 1842, and the certificate of the executor on the back of the license that, in accordance with the same, on the fourth day of January, 1843, he conveyed the premises in accordance with the license.

4. Also another paper filed as a return.

The defendant further offered the record of the deed from Crary to John Stewart, also the record of the certificate, being a deed of the undivided one-eighth of the premises in controversy, and other lands included in the Convis bond to Mills.

This deed was objected to by plaintiff's counsel on the grounds—

1. That the same is unauthorized.

2. There is no order by the probate court authorizing these proceedings or approving the same.

The objection was overruled, and plaintiff's counsel

excepted, and this exception constitutes the plaintiff's first assignment of error.

This deed was executed January 4, 1843, for the purpose of carrying out the contract made by Convis to Mills in fulfillment of the bond executed by the former to convey. This proceeding was author.zed by the statute of 1840, heretofore referred to, section 4 of which reads as follows:

" Whenever it shall be represented and made to appear to the court of probate by petition in writing, by any person contracted with by bond, covenant, or other contract in writing, that a deceased testator or intestate, in his or her lifetime, entered into such bond, covenant, or contract to convey some real estate to him or her, but was prevented by death, and that such person or persons contracted with, as aforesaid, have on his or their part performed, or stand ready to perform, the condition of such bond, covenant, or contract made with the deceased, the said court may, after due notice given to all concerned, or their guardians where minors are interested, who do not signify their assent to such conveyance, grant license to and empower the executors or administrators of such deceased obligor, covenantor, or contractor, to make and execute such conveyance or conveyances to such person or persons contracted with, as aforesaid, as it shall appear that said obligor, covenantor, or contractor would, by his bond, covenant, or contract, be obliged to make and execute, in case he, she, or they were living at the time of the performance of the bond, covenant, or contract by the contractors on their part, making reasonable allowance for any alteration, improvement, or injuries that may be made or done in the same estate since the contract was made, as the said court may award, which conveyance or conveyances, when duly acknowledged and recorded in the registry of deeds for the county where such estate shall lie, shall be good and valid, and the moneys or consideration paid for such estate (if not paid to such deceased contractor during his lifetime) shall be assets in the hands of the executor or administrator, and be apportioned among the representatives of the deceased as other personal estate."

This property was the same entered by Convis, and the proceedings recited in the record upon which the court made the order for sale were sufficient to give the probate court

jurisdiction, and the sale was made by Crary, and the recital in the deed says by him as executor.

It will be noticed that the act requires no confirmation of the deed, and, if it did, such confirmation would be presumed after a lapse of 40 years; but the statute says that the conveyance, when made,—

"Acknowledged, and recorded in the registry of deeds for the county where such estate shall lie, shall be good and valid."

The objection to this deed cannot be sustained.

The will created the trust to be carried out by the executors, and it was the duty of the court to see that it was faithfully executed; and, if the trustees appointed by the testator failed to accept or discharge the trust, it was the duty of the court to commit its execution to persons who would discharge the duties created by the trust. This may be done in the case of a will by appointing an administrator, and issuing to him letters with the will annexed. Rev. Stat. 1838, pp. 277, 278, §§ 5, 9. The deed sufficiently shows that the executor in executing it did so in the discharge of his duties under the will.

After offering in evidence the act of 1839, defendant's counsel next offered a deed from Isaac E. Crary, as executor, to John Stewart. On this deed is indorsed the approval of the judge of probate, under the act of 1839, referred to. This was objected to on the grounds—

"1. That there is no authority in the probate court, or by virtue of any statute, by which the executor could convey this land.

"2. That the steps taken under the act do not show that the lands were such as the act authorized to be partitioned or conveyed.

"3 That the lands partitioned or conveyed by virtue of this deed were not lands held in common, but of which the deceased died in possession of the whole title, as shown by the uncontradicted testimony and admission of the defendant.

"4. That the record of the certificate of the judge is not

sufficient to show a compliance with the requirements of the act."

The objections were overruled and exceptions taken. This is plaintiff's second alleged error. This deed bears the same date as the one above mentioned, and was acknowledged January 14, 1843, and recites a consideration of one dollar. It conveys the property in question. The description contained in the deed is as follows:

"All those certain pieces or parcels of land situate in the village of Verona, in said Calhoun county, and described as follows, viz: Lots one, two, three, four, five, and eight, of block sixty-eight; lots five, six, seven, and eight, and the undivided half of lots one, two, three, and four, of block sixty-nine; the undivided half of lot two, of block seventy; also blocks fifty-five and fifty-eight, with the water-power connected with said blocks fifty-five and fifty-eight, and the right of maintaining the dam connected with said water-power at the height the same was erected by the said Ezra Convis in his life-time, together with the right of flowing with the waters of Battle creek, to the height of said dam, such lands as were owned by the said Ezra Convis at the time of his decease; also the right of flowing with said waters to a like height the lands acquired of Isaac Bodine; also the right of flowing acquired of John S. Holliday; with all and singular the houses, tenements, and appurtenances, and all the interest of the estate of the said Ezra Convis, in law or equity, of, in, to, or out of the same; to have and to hold the premises hereby granted, with the appurtenances, unto the said John Stewart, his heirs and assigns forever."

The approval of the judge of probate of this deed is a sufficient compliance with the statute of 18.9. It is as follows, and indorsed on the deed:

"*Calhoun County—ss.:* This certifies to those it may concern that I, Henry J. Phelps, judge of the court of probate of the county aforesaid, do hereby approve of the foregoing conveyance of the execution of the last will and testament of Ezra Convis, deceased, in conformity to an act entitled 'An act authorizing Isaac E. Crary, executor of the last will and testament of Ezra Convis, to sell certain lands,' approved April 15, 1839.

"H. J. PHELPS. Judge of Probate.
"*Dated Marshall, January 14, 1843.*"

The statute does not require that the approval or record of approval should appear anywhere else except upon the back of the deed, and what appears must be construed as "the approval or consent to such sale or partition," whether judicial in character or otherwise. The executor not only derived his power to sell the land of his testator from the act of 1839, but also from the will. By the latter the executors were expressly authorized "to sell, at such times and in such manner" as they might deem expedient, all his "town or village property;" and this includes the description of the land in question. The power under the will was sufficient for that purpose. *Osman v. Traphagen,* 23 Mich. 80; *Battelle v. Parks,* 2 Id. 531; *Haddon v. Hemingway,* 39 Id. 615; *Cheever v. Washtenaw Circuit Judge,* 45 Id. 10; *Tracy v. Murray,* 49 Id. 35; 4 Kent, Comm. 320–328; 2 Spence, Eq. Jur. 366; 1 Sug¹. Powers, 131–134; 1 Perry, Trusts, § 248; Will. Eq. Jur. 486, 487; *Forbes v. Peacock,* 11 Sim. 152, 160.

A portion of the property mentioned in the deed was undivided, and of the description mentioned in the act of 1839; but, if this were not so, the power to make the deed was given by the will. The defendant claims possession of the premises in question under these deeds from Crary to Stewart, and the grantees of the latter, and, whether they are valid or not, they were admissible in evidence for the purpose of showing that the defendant was in possession of the property under color and claim of title, and the extent thereof. And aside from this the deed was valid and admissible in evidence. The Legislature had the power to make the statute of 1839, under the Constitution then existing, and it was competent for Convis to make the will he did.

Counsel for defendant then offered a deed made by John Stewart to the estate of Ezra Convis to carry out the partition of the property. This was objected to for the same reasons given for the objection made to the last conveyance, and

also that it was irrelevant, immaterial, and incompetent; against which objections the deed was received in evidence and exception taken, and which is the plaintiff's third assignment of error. This conveyance was made and acknowledged on the same day as the other deeds. It was in the nature of a release by Stewart of so much property held in common as Crary did not convey to him. Crary's first deed conveys one-eighth of a large quantity of land. By the second deed and the one now being considered, Stewart and Crary partitioned the lands in which Stewart had the one-eighth interest, and Stewart no longer had any interest in any of the lands released. There was nothing wrong or illegal in partitioning the property in this manner, and in so doing the executor did no more than he was authorized to do under the will of his testator. The deed was properly received in evidence.

Counsel for defendant next offered in evidence the record of a deed from John Van Arman and wife, Amanda, to Elijah Fish, dated the sixth day of November, 1843. This was objected to as irrelevant and immaterial, and not acknowledged as required by statute to admit it to record. The objection was overruled, and an exception taken, and this is the plaintiff's fourth assignment of error.

This evidence was material. Mrs. Van Arman had an interest in the property, and by uniting with her husband she could convey it, if of age, by her deed, and she so conveyed it to Elijah Fish, and her deed was acknowledged on the sixth day of November, 1843, and conveys an undivided half of the premises in question, with other property, for the consideration of $3,900. The acknowledgment is in the following language and form:

"STATE OF MICHIGAN, ⎫ ss.
   County of Calhoun, ⎭

"On this sixth day of November, 1843, personally came before me John Van Arman and Amanda Van Arman, known to me to be the persons described in and who executed

the foregoing instrument, and acknowledged the execution thereof.

"And the said Amanda, being examined by me separate from her husband, acknowledged that she executed the same for the purpose in it specified *with* fear or compulsion of any person.

" ELI L. STILLSON,

" Notary Public."

The ground of the objection to this certificate of acknowledgment is, as argued by counsel,—

"That it does not state the wife executed such deed without any fear or compulsion of her husband."

When the words are added which were omitted through a mere clerical mistake, the acknowledgment is sufficient, and these may and ought to be added in construing the instrument. There can be no doubt but that the word "with" was intended by the notary to be "without," and, when the circumstances under which it was made are known and considered, any other construction would be not only unreasonable, but stupid. With this modification of the certificate, I hardly think the learned counsel for plaintiff would still regard it as insufficient. It surely would not be.

Whenever *substance* is found in a certificate of acknowledgment, obvious *clerical* errors and all *technical* omissions and effects will be disregarded, and, in order to uphold it, the certificate will be read in connection with the instrument, and in the light of the surrounding circumstances. *Morse v. Hewett*, 28 Mich. 481; *Brown v. McCormick*, Id. 215; *Nelson v. Graff*, 44 Id. 433; *Ford v. Ford*, 70 Wis. 19 (33 N. W. Rep. 188); *Taylor v. Youngs*, 48 Mich. 268; *Sparrow v. Hovey*, 41 Id. 708; *Brunswick v. Brackett*, 37 Minn. 58 (33 N. W. Rep. 214); *Wells v. Atkinson*, 24 Minn. 165; *Chandler v. Spear*, 22 Vt. 407; *Carpenter v. Dexter*, 8 Wall. 528; *Gorman v. Stanton*, 5 Mo. App. 585; *Johnson v. Badger*, 13 Nev. 351; *Scharfenburg v. Bishop*, 35 Iowa, 61; *Muller v. Boone*, 63 Tex. 91; *Donahue v. Mills*, 41 Ark. 421; *Gordon v. Leech*, 81 Ky. 229.

The circumstances surrounding the execution of this deed, and the making of this certificate, are most unfavorable to the views taken by counsel for plaintiff. The husband of Mrs. Van Arman was one of the leading lawyers in the State, and the notary who took the acknowledgment was also a lawyer in good repute, and nothing appears showing or tending to show that a good and valid deed, properly acknowledged by Mrs. Van Arman, sufficient to convey her interest, was not intended, and nothing is shown as occurring since it was made, before the commencement of this suit, indicating that it was not regarded as a perfect and valid instrument, and conveying Mrs. Van Arman's interest in the property described in the deed. I think the court did right in receiving it in evidence.

Counsel for defendant offered in evidence a deed from John Stewart and wife to the defendant and Elijah Fish, conveying an undivided one-half of the mill property as blocks 55 and 58. This was objected to as irrelevant and immaterial. The objection was overruled and exception taken, and this is the fifth error assigned. This conveyance was made June 1, 1849. Stewart went into possession under his deed from Crary, and possession of the property was then in him and Merritt, who was the agent of Fish, and they thus held such possession up to the time of the execution of the deed. From that time Fish and Merritt were the sole owners and occupants of the property, according to the undisputed testimony, and Fish's heirs became subsequently grantors of the defendant. This made the deed both material and relevant, and properly admissible.

The record then proceeds as follows:

"It was then admitted by plaintiff's counsel (subject to objection that it is irrelevant) that Elijah Fish is dead, and that his heirs joined in conveyances of their interest in this property to William Merritt.

" William Merritt was then recalled in his own behalf, and gave evidence tending to show that he was conversant with

the premises in question from the time of the deed to Fish; that he then lived in Battle Creek, about one mile from the property, and was a son-in-law of Fish, who lived in Pennsylvania, and he took possession for Fish immediately after the deed. At that time John Stewart was occupying it. He and Fish were in joint occupation. Witness then said:

"I continued to occupy, as agent for Fish, until he died. I claimed, in my own right, one-quarter. Fish and I and Stewart claimed title according to papers and deeds. We were in possession, claiming title. I am in possession, and my possession has been continuous.'"

The proceedings in the probate court in 1842, appointing Lydia Convis guardian of the minor children, were next put in evidence by defendant  Defendant then rested.

"Plaintiff's counsel, in rebuttal, offered in evidence the proceedings of the probate court, as contained in the files and records thereof, in relation to the assignment of dower to the widow, Lydia Convis. First, the warrant; next, the certificate of the oath of the commissioners; next, the return of their proceedings on the assignment of dower, signed by the three, under date of April 18, 1843; also the confirmation of the report by the order of the court, in volume 4, page 463. In connection therewith we offer another paper found in the files in that court referring to the application for dower. It is admitted that these are all the files and records that can be found in the probate court in reference to the assignment of dower.

"Defendant's counsel objected to the evidence of the assignment of dower—

"1. There is no application in any sense for the assignment of dower. That is essential to give this court jurisdiction.

"2. It does not appear from the records that there was no dispute as to the right of dower. That is essential to jurisdiction.

"3. The description of the property in the warrant of dower is such that it is simply impossible for the commissioners to rightfully know how that dower should be set out. It is indefinite and uncertain.

"4. No notice to the heirs was given. It was done without notice to anybody. Of course, Mrs. Convis was the guardian. She was a party in interest, as she was a guardian of the minor heirs.

"5. The last paper in regard to the application is a paper

not signed; it is without filing, without any intimation whatever of any date, without any intimation of a probate record. It is a mere slip of paper found among the probate files, and that is all there is of it. The application to give the court jurisdiction should be in writing. It is irrelevant and incompetent.

"6. The oath taken by the commissioners for dower does not accord with the statute."

The objection was sustained, and the evidence offered relating to dower and its assignment was excluded. This ruling is the plaintiff's sixth assignment of error.

If the widow's right of dower had never been set off to her, or, if set off, she had never taken possession thereof, the owner of the fee could in no manner be affected by it if he had remained in possession undisputed for the period of 20 years after the death of the husband in the case. The right could only continue if duly set off while she lived; and if she failed to apply for and obtain it, as provided by law, or if she did thus obtain it and abandoned it for that length of time, the owner of the fee had the right to take possession of, use, and occupy the premises, during all or any portion of said period, to protect his interest therein; and in this case, the widow having failed to claim or take possession of her dower for more than 20 years and a month after she was entitled so to do, she was precluded from bringing an action thereafter therefor.

It nowhere in the record appears that the widow ever occupied or possessed any portion of the premises in question under a claim of dower, or any other claim.

All the proceedings claimed to have been taken to set apart dower for the widow appear in the record, and these proceedings, it is contended by the defendant, are void for want of jurisdiction; and the reasons upon which this claim is based were stated when the objection was made. The first is, there was no application by any person for such assignment.

The jurisdiction of the probate court in the matter of dower is purely statutory. It is in no way essential to the

settlement of the estate. Smith, Prob. Law, 214. It is a proceeding, when the estate is solvent, in which only the widow and heirs are interested. *Campbell, Appellant,* 2 Doug. 146; Chev. Prob. Law, 246. And proceedings to assign dower may be had at any time before, during, or after administration is closed.

An assignment of dower at common law was enforced by writ of *unde nihil habet,* or by writ of right of dower against the tenant of the freehold, and if judgment was obtained by the widow she could then recover her possession in ejectment. Park, Dower, 283; 1 Rop. Husb. & W. 429; 2 Scrib. Dower, 83. The writ is of the same nature and efficacy as the writ of right to recover the fee. 3 Bl. Comm. 182. This writ issued upon the filing of a *præcipe* wherein the widow states that she has been married, and declares herself to be the wife of the person whom she claimed was her late husband. And the writ would be abated if this was omitted. *Fulliam v. Harris,* 2 Cro. Jac. 217; 1 Rop. Husb. & W. 429; *William v. Gwyn,* 2 Saund. 43, and note; 3 Chit. Pl. 1311. And until dower had been assigned, or if judgment had been obtained upon the writ, and possession not taken by the demandant, the owner of the fee or remainder-man might enter and take possession to protect his title. When this widow's right of action accrued, the common-law practice to some extent prevailed.

The writ of dower is now abolished in this State. Ejectment may, however, be resorted to to accomplish the same purpose, and in such case the description of the land in the declaration must be so certain that possession may be delivered by the sheriff without any reference to any description *dehors* the writ, and any defect of this kind cannot be cured by reference to any deeds or records. *Evans v. Evans,* 29 Penn. St. 277.

It may be safely asserted that, either at common law or under our statute, when the owner of the fee or the tenant

whose duty it was to set apart dower has failed so to do, some sort of application stating such facts as are jurisdictional should be made to the proper court, before such court is authorized to take cognizance of the matter. Among such facts are those of the residence of the widow, that she is a widow, that the estate in which she asks to be endowed is that of her deceased husband, and of which he died seized; and, under our statute, she ought further to state that her right to dower is not disputed by the heirs or devisees, and that she, or some other person interested in the land, wishes it set apart.

In this case it is not claimed that any other person than the widow ever made any application, and there is nothing properly in the record showing that she ever made one. The claim that she did make such application is based principally upon some *memoranda* found among the files in the probate court, but which constituted no part of the files in the estate, and were entirely inadmissible, for any purpose, in this case.

The statute under which this claimed dower proceeding was had is a special one, and all the facts necessary to give the court jurisdiction must in some manner be made to appear. Rev. Stat. 1838, p. 263; Gary, Prob. Law, § 434; *Sheafe v. O'Neil*, 9 Mass. 9; *Ryder v. Flanders*, 30 Mich. 342; *Smith v. Smith*, 5 Dana, 179; *Stevens v. Stevens*, 3 Id. 371. Neither the records of the probate court nor any other testimony in the case furnishes any such evidence. It has been held in one case, under a statute where the language is quite similar to ours, that the appointment of commissioners to set apart dower is *prima facie* evidence of a proper application (*Williams v. Morgan*, 1 Litt. 167); but in a subsequent case in the same court it was otherwise determined.

The heirs to the estate of Convis were parties interested both in the possession and fee of the land belonging to the estate. It is not claimed that Convis resided on the prem-

ises in question when he died, nor that the widow or any of the heirs resided thereon or were in the occupancy or possession thereof, and the widow enjoyed no rights in the premises arising from any of these facts under the law then existing. Rev. Stat. 1838, § 6, p. 263.

No incumbrance or interest in property could be created therein against the consent of the heirs, under the statutes regulating dower or otherwise, without notice thereof first given to them. The testimony does not show that any such notice was ever given. The report of the commissioners says they—

"Did meet together on the thirty-first day of January, 1843, to discharge said duty and execute the trust aforesaid; that as well the said Lydia Convis as the said heirs of the said Ezra Convis, in person and by their attorneys, appeared and were present."

This is no evidence of notice, however, when the situation of the parties is considered. Lydia Convis was the doweress.

The children were all minors, and she was their guardian. Their interests were antagonistic to hers. The widow, under such circumstances, could not appear for them, nor could they for themselves appear; neither could they appoint or choose an attorney. So that, legally, they had no notice of the dower proceedings being had against them, and the proceedings were for that reason void. *In re Cooper,* 15 Johns. 533; *Buck v. Sherman,* 2 Doug. 176; *Strachan v. Brown,* 39 Mich. 168; *Campbell, Appellant,* 2 Doug. 146.

It is true the guardian may have set out dower to the widow. Rev. Stat. 1838, p. 349, § 18; How. Stat. § 6325. But this does not apply to a case where the guardian is the doweress. No person can be a judge in his own case.

Whether the statute required notice to be given to the heirs in express language or not can make no difference, as the necessity of one in such case will be implied. And while judicial proceedings are not essential except in cases

where the assent of the parties cannot be obtained, and while, even in such cases, no rigid doctrines have been held as to the manner of setting out dower, however provided (and great liberality has been indulged in accomplishing it), still, when a resort to the courts does become necessary, jurisdic-. tion in the matter must be properly obtained. It was not done in this case.

If it be said that such proceedings, however defective, cannot be collaterally attacked after confirmation, it is a sufficient reply that parties whose interests are prejudiced may always take advantage of want of jurisdiction in the court where the injury occurred. *Gillett v. Needham*, 37 Mich. 143.

In the statute of 1846 it is expressly provided that notice of the application must be given to the heirs and devisees, and it authorizes the probate court to direct in what manner it may be done. This statute, however, adds nothing to what was before required and imperatively implied. Rev. Stat. 1846, p. 268, § 8. The clause in the statute of 1846 does not necessarily imply that no notice was necessary before. Undoubtedly, it was made to secure attention to, and observance of, the requirement already implied, and which had not been complied with because of carelessness or want of knowledge on the part of those having such matters in charge.

It is quite possible that the irregular and defective proceedings offered in evidence taken to set apart dower might be held a sufficient protection to the widow, were the action against her, if she had ever taken possession of the land set apart under the assignment, on the ground of the lapse of time, if the remainder-man had never made any objection thereto, but treated his own estate as commencing at the end of the dower interest. In such case he might be held to have waived his right to disturb the assignment. *Doe v. Blakeway*, 5 Car. & P. 563; *Asher v. Whitlock*, L. R. 1 Q. B. 1; *Anstee v. Nelms*, 1 Hurl & N. 225; *Salmons' Adm'rs v. Davis*, 29

Mo. 176; *State v. St. Gemme's Adm'r,* 23 Id. 344; Wood,. Lim. 528; Ang. Lim. § 375; *Jackson v. Schoonmaker,* 4 Johns.. 390; *Tilson v. Thompson,* 10 Pick. 359.

Before the doctrine can be applied, however, the equitable rights of the widow must require it, and she must have entered into possession of the premises assigned to her, and continued the same. *Thomas v. Simpson,* 3 Penn. St. 60, 68; *Bratton v. Mitchell,* 7 Watts, 113; 2 Scrib. Dower,. 171.

Such possession of the widow in this case does not appear in the record, and I do not think, under the circumstances shown, the widow acquired any right or interest in the premises in dispute by waiver on the part of the heirs, or any of them, or by the owners of the fee.

The description of the property contained in the warrant is defective and imperfect, and its sufficiency may very properly be questioned; but, as the other proceedings in the case were invalid for the reasons before stated, there is no occasion for discussing the point made by counsel upon the sufficiency of the warrant, and, if insufficient, whether or not it could be attacked in this proceeding if jurisdiction had been obtained by the court.

The defendant not only claims title to the premises in question through the several conveyances hereinbefore stated and offered by him in evidence, but claims that the statute of limitations bars the plaintiff's action. He insists, and it is not contradicted in the testimony, that he and those under whom he claims have been in the peaceable and quiet possession and occupancy of the property in question for a period of about 40 years, and that such possession has all the time been hostile to that of the plaintiff's claim; that his possession has been visible, distinct, and exclusive; and he now urges that, if the plaintiff and those under whom she claims. ever had a right of action against him for the interest she now prosecutes, it accrued at the time the defendant and his.

grantors went into the exclusive possession of said premises, and as soon as 1843, or before.

In 1878, this Court held that the recovery of dower may be barred by the statute limiting actions of ejectment. See Rev. Stat. 1838, p. 573, § 1; Rev. Stat. 1846, p. 598, § 1; 2 Comp. Laws 1871, p. 1973, § 1; How. Stat. § 8698. See, also, *Proctor v. B gelow*, 38 Mich. 282.

The limitation in such cases when this suit was commenced (in July, 1883), is found in the Laws of 1863, p. 388, § 1, and which took effect on the first day of January, 1864.

Mrs. Convis' right of action for her dower, if any, accrued one month after the time her husband died, which was in February, 1837. Laws of 1833, pp. 264, 309, 332.

Her right to recover dower expired sometime during the year 1857, and at no time during this period is it shown she was laboring under any disability preventing her from taking proceedings to recover her dower interest; and the statute then in force limited the widow's right of action to 20 years. See Laws of 1833, p. 570, § 6, which reads as follows:

" And be it further enacted that no writ of right, or other real action, no action of ejectment or other possessory action, of whatsoever name or nature, shall hereafter be sued, prosecuted, or maintained for the recovery of any lands, tenements, or hereditaments, if the cause of action shall accrue after the passing of this act, but within twenty years next after the cause of action shall accrue, or have accrued, to the plaintiff or defendant, or plaintiffs or defendants, or those under whom he, she, or they claim; and that no persons having right or title of entry into houses, lands, tenements, or hereditaments, shall hereafter thereinto enter, but within twenty years next after such right of entry shall accrue or have accrued."

Considerable space herein has been devoted to the claimed assignment of dower of Mrs. Convis, as it is insisted by the plaintiff's counsel that, by the assignment claimed to be shown, the widow would have held in the premises an intervening interest, which, when secured, entitled her to the

possession so long as she lived, and thereby the plaintiff's right of action, and of those under whom she claimed, against the defendant was postponed until after the death of Mrs. Convis, which, as we have seen, occurred in 1872, and that the statute of limitations did not begin to run against plaintiff until that time, for that reason.

The right of dower is not an undivided third of the entirety, but of one-third in severalty (*May v. Rumney*, 1 Mich. 1, 9; *Rayner v. Lee*, 20 Id. 384); nor is it one-third in quantity of the lands of which the husband died seized, but she is entitled to the use of such part as will yield one-third of the entire income of the whole. *Leonard v. Leonard*, 4 Mass. 533; *Conner v. Shepherd*, 15 Id. 167. The right until assignment is inchoate, and cannot be set up by any one in ejectment against an heir entitled to the fee. 4 Kent, Comm. 61, 62; *Howe v. McGivern*, 25 Wis. 525; *Johnson v. Wilmarth*, 13 Metc. 416. To the extent it exists, it is a continuance of the estate of the husband, and is held of him by appointment of law, and, under our statute, is liable to be lost or defeated by lapse of time, the same as any other interest in land, and in the same manner as it might have been if the husband were living, and under the same circumstances.

Until dower is legally assigned or set off, the person entitled to the fee may bring ejectment against one wrongfully in possession, and recover. The widow's interest did not stand in the way of the plaintiff, or those under whom she claims, bringing action against the defendant, or against those under whom he claims, at any time after they went into possession of the premises in question.

As to the interest of the deceased heir, Wallace Convis, that was inherited by his brothers and sisters, and the fourth part of which the plaintiff claims to represent, it was barred by the statute long before the commencement of this suit. He became of age in 1858, and died in 1869. His right of action against the defendant, if he had any, accrued wl en he

became of age, and the statute continued to run after his death. It was not suspended by any change of title. *De Mill v. Moffat,* 49 Mich. 130; *Hogan v. Kurtz,* 94 U. S. 773; Wood, Lim. 480, and note.

Albert Convis was the next oldest child of Ezra. By the record he conveyed his interest in the premises in question to Mrs. Van Arman, and she to the plaintiff. He was of age as early as 1844 or 1845, and was under no disability. His rights were therefore barred long before Mrs. King, the plaintiff, received her deed from Mrs. Van Arman, and before the bringing of this suit. She can urge nothing through him which he could not legally claim.

Emily L., the plaintiff, was married to Mr. King in 1872. She was of age, without question, in 1855. Therefore, if she had any right of action against the defendant, it had run at least 16 years before she was married. The marriage created no disability. See Laws of 1855, p. 420, § 3.

Mrs. Van Arman's inherited rights in the property were also barred, although she was married before she became of age. She was relieved from all disability to bring her action against the defendant by the legislation of 1855, referred to. How. Stat. §§ 6295–6297; *Burdeno v. Amperse,* 14 Mich. 91; *Ransom v. Ransom,* 30 Id. 328; *Rhoades v. Davis,* 51 Id. 306; *Comstock v. Comstock,* 27 Id. 97; *Hill v. Bowman,* 35 Id. 191.

Both under the law of 1846 and of 1863, the plaintiff's suit was barred. The provision contained in section 5, Rev. Stat. 1846, p. 599, grew out of the disability of married women; and the removal of such disability by the statute of 1855 left no reason for the continuance of the possession in force, and it may be properly regarded as repealed by implication. *Hayward v. Gunn,* 82 Ill. 385, 391; *Brown v. Cousens,* 51 Me. 301; *Kibbe v. Ditto,* 93 U. S. 674; *Cameron v. Smith,* 50 Cal. 303.

The provision of How. Stat. § 8706, that the rights of parties are to be determined by the law in force when the right of action accrued, relates, not to the subject of disabilities, but to the *time* when the statute became a law.

I am unable to discover that the plaintiff represents any interest in this suit not bound by the statute referred to, and certainly it would seem, after a lapse of nearly 40 years, during which no claim appears to have been made upon the property by her or her grantors, or by any one except the defendant and his grantors, who have possessed and occupied the same during the whole period, to the exclusion of every other person, under claim of title in good faith, and after having paid a valuable consideration therefor, that both law and justice require that something more than a mere technical claim should be made to appear before the defendant should be dispossessed and deprived of his property.

The deed of a minor, with knowledge of his or her rights, I think should be held affirmed by the grantor, unless some claim is made by such minor to the conveyed premises within a period of 40 years after he or she becomes of age. The protection of the interest of *bona fide* purchasers, and the stability of titles in a well-ordered community, require such a holding, and the necessity for which is well illustrated in the present case.

It was then admitted by the parties "that the plaintiff was a married woman, and had been the wife of Amos R. King since 1872." Evidence was then offered tending clearly to prove that Ezra Convis and Lydia Convis were married in February, 1823. Evidence was also received to prove that Amanda was born January 22, 1824, and was not 21 years of age at the date of the deed of John Van Arman and wife to Elijah Fish. And, on the contrary of this, the defendant introduced evidence tending to prove that Mrs. Van Arman was over 21 years of age at the time of the exe-

cution of said deed to Fish. These are the statements contained in the record upon the subject of Mrs. Van Arman's age.

The evidence of the deed from John Stewart and wife to Amanda Van Arman, Albert Convis, Ezra Convis, Emily Convis, and Crary Wallace Convis, of several parcels of land, and among them the undivided half of blocks 55 and 58, dated January 4, 1843, was properly received in evidence.

The deed offered in evidence in connection with the other testimony relating to Mrs. Convis' dower, and a deed of release executed by Lydia Convis to Elijah Fish, dated November 6, 1843, were by defendant's counsel objected to as irrelevant and immaterial. The objection was sustained, and an exception taken. This exception is the plaintiff's sixth assignment of error. In the view we have taken of the case these were irrelevant, and no error was committed in excluding them.

At the close of the testimony counsel for plaintiff presented the following 19 written requests to charge:

" 1. That Ezra Convis died seized of the premises in controversy in 1837.

" 2. That Convis left a widow, Lydia Convis, who survived him until 1872, when she died, never having remarried.

" 3. That Convis left five children, who were his heirs at law, namely: Amanda, Albert, Ezra, Emily, the plaintiff, and Wallace; that Wallace was born after his father's death, and died in 1869, without having married, and without issue.

" 4. That Amanda was married to John Van Arman, April 27, 1841, and still lives, and is still married to said John Van Arman.

" 5. That Albert deeded his interest in the premises in controvesy to Amanda, which included the interest which accrued to Albert by the death of Wallace, and that Amanda deeded to the plaintiff the interest thus received as well as what descended to her upon her father's death, and which accrued to her by the death of Wallace, before the commencement of this suit.

"6. That, if the plaintiff is entitled to recover, she is entitled to recover a three-fourths interest in the undivided one-half of the premises in controversy.

"7. That the deed of Crary to Stewart of all the premises in controversy is void.

"8. That if Amanda Van Arman was under 21 years of age when she joined with her husband in the deed to Fish, then that deed would be void.

"9. That if she was 21 years of age when she made the deed, it would only be good for her undivided interest in the estate, and the plaintiff would still be entitled to recover for the interest which she inherited from Wallace and from the estate, and that which she secured though Amanda's interest that accrued from Wallace's death, as well as that which she inherited from the estate.

"10. That this action is not barred by the statute of limitations.

"11. That the plaintiff, upon all the facts in this case, is entitled to recover; the only question being as to the amount of her interest.

"12. The jury are instructed that the deed of John Van Arman and wife, put in evidence, conveyed no title so far as John Van Arman was concerned, for the reason that he is not shown to have had any title to convey.

"13. Amanda Van Arman joining with her husband in the deed put in evidence by defendant would only operate as a release of any dower interest she might have in the lands conveyed, and would not be otherwise binding upon her.

"14. If you find that Amanda Van Arman, formerly Convis, was under 21 years of age when she executed it (the deed), then such deed is utterly void.

"15. If you find Amanda Van Arman was 21 years of age when she joined in the deed to Fish, then if such deed is obligatory, and the release of dower, it would, at most, only convey what interest she acquired as heir, as she is not shown to have derived any title in any other way.

"16. The deed of Isaac E. Crary to John Stewart was inoperative to convey title to Stewart, because he had no title to convey, and no authority to partition or sell and convey any lands except such as Ezra Convis, the deceased, owned and held in common with some other person or persons.

"17. There is no evidence in this case that the Ezra Convis referred to in the statute of 1839, put in evidence, owned

and held the lands in question in common with any one, but the proof shows that Convis held title to the premises in controversy in his own right.

"18. Mrs. Van Arman being a married woman at the time she became entitled to any shares or portions of the estate or premises in controversy, the statute of limitations would not run against any rights the plaintiff received through her, or against the plaintiff for the same reason.

"19. There can be no adverse possession of lands the title to which is held by two or more, as tenants in common, as against any co-tenant, until there is an actual ouster, the possession of one being the possession of all; and the undisputed testimony in this case is that John Stewart, defendant's grantor, deeded the undivided half of these lands to Amanda, Albert, Ezra, Emily, and Wallace Convis, and there is no evidence of any actual ouster."

Several of these requests relate to questions of fact about which there was no contest. Whether Mrs. Van Arman was or was not of age at the time she and her husband deeded to Fish is immaterial. However, I have regarded her as a minor in the discussion of the questions involved. If the circuit judge was correct in his conclusion, it is unnecessary to consider further any of the requests of the plaintiff's counsel.

After a careful examination and review of the case upon the undisputed facts, I think the court was right in the direction given to the jury, and the judgment should be affirmed.

CHAMPLIN and MORSE, JJ., concurred.

CAMPBELL, C. J. If there were any possible doubt on the conceded facts, I might desire to reserve my opinion upon some suggestions of my Brother SHERWOOD, but I am satisfied that plaintiff could, under no circumstances, recover in this action, and I concur in the affirmance.